IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PPA GROUP, LLC | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| LLOYDS SYNDICATE SJC-2003; | § | |
| LLOYDS SYNDICATE HIS-0033; | § | |
| LLOYDS SYNDICATE AMA-1200; | § | |
| LLOYDS SYNDICATE TAL-1183; | § | |
| LLOYDS SYNDICATE APL-1969; | § | |
| LLOYDS SYNDICATE NAV-1221; | § | CIVIL ACTION NO. 5:21-cv-00031 |
| LLOYDS SYNDICATE ADV-780; | § | |
| LLOYDS SYNDICATE QBE-1886; | § | |
| LLOYDS SYNDICATE ATL-1205; | § | |
| LLOYDS SYNDICATE SKD-1897; | § | |
| LLOYDS SYNDICATE CHN-2015; | § | |
| LLOYDS SYNDICATE ENH-5151; | § | |
| LLOYDS SYNDICATE FDY-435; | § | |
| AND LLOYDS SYNDICATE HDU- | § | |
| 382, | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff PPA Group, LLC ("Plaintiff") files its Original Complaint against Defendants

Lloyds Syndicate SJC-2003; Lloyds Syndicate HIS-0033; Lloyds Syndicate AMA-1200; Lloyds

Syndicate TAL-1183; Lloyds Syndicate APL-1969; Lloyds Syndicate NAV-1221; Lloyds

Syndicate ADV-780; Lloyds Syndicate QBE-1886; Lloyds Syndicate ATL-1205; Lloyds

Syndicate SKD-1897; Lloyds Syndicate CHN-2015; Lloyds Syndicate ENH-5151; Lloyds

Syndicate FDY-435; and Lloyds Syndicate HDU-382 (collectively "Defendants" or

"Underwriters") and would respectfully show the Court as follows:

## I.   PARTIES

1.      Plaintiff PPA Group, LLC is a Nevada limited liability company with its principal place of business located at 9050 North Capital of Texas Highway, Bldg. 3, Ste. 320, Austin, Texas 78759.  The members of PPA Group, LLC are residents of Texas.

2.      Lloyds Syndicate SJC-2003 is a foreign entity engaged in the business of insurance in Texas.  Lloyds Syndicate SJC-2003 may be served through Mendes and Mount, 750 Seventh Avenue, New York, NY 10019.

3.      Lloyds Syndicate HIS-0033 is a foreign entity engaged in the business of insurance in Texas.  Lloyds Syndicate HIS-0033 may be served through Mendes and Mount, 750 Seventh Avenue, New York, NY 10019.

4.      Lloyds Syndicate AMA-1200 is a foreign entity engaged in the business of insurance in Texas.  Lloyds Syndicate AMA-1200 may be served through Mendes and Mount, 750 Seventh Avenue, New York, NY 10019.

5.      Lloyds Syndicate TAL-1183 is a foreign entity engaged in the business of insurance in Texas.  Lloyds Syndicate TAL-1183 may be served through Mendes and Mount, 750 Seventh Avenue, New York, NY 10019.

6.      Lloyds Syndicate APL-1969 is a foreign entity engaged in the business of insurance in Texas.  Lloyds Syndicate APL-1969 may be served through Mendes and Mount, 750 Seventh Avenue, New York, NY 10019.

7.      Lloyds Syndicate NAV-1221 is a foreign entity engaged in the business of insurance in Texas.  Lloyds Syndicate NAV-1221 may be served through Mendes and Mount, 750 Seventh Avenue, New York, NY 10019.

8.      Lloyds Syndicate ADV-780 is a foreign entity engaged in the business of insurance in Texas.  Lloyds Syndicate ADV-780 may be served through Mendes and Mount, 750 Seventh Avenue, New York, NY 10019.

9.      Lloyds Syndicate QBE-1886 is a foreign entity engaged in the business of insurance in Texas.  Lloyds Syndicate QBE-1886 may be served through Mendes and Mount, 750 Seventh Avenue, New York, NY 10019.

10.     Lloyds Syndicate ATL-1205 is a foreign entity engaged in the business of insurance in Texas.  Lloyds Syndicate ATL-1205 may be served through Mendes and Mount, 750 Seventh Avenue, New York, NY 10019.

11.     Lloyds Syndicate SKD-1897 is a foreign entity engaged in the business of insurance in Texas.  Lloyds Syndicate SKD-1897 may be served through Mendes and Mount, 750 Seventh Avenue, New York, NY 10019.

12.     Lloyds Syndicate CHN-2015 is a foreign entity engaged in the business of insurance in Texas.  Lloyds Syndicate CHN-2015 may be served through Mendes and Mount, 750 Seventh Avenue, New York, NY 10019.

13.     Lloyds Syndicate ENH-5151 is a foreign entity engaged in the business of insurance in Texas.  Lloyds Syndicate ENH-5151 may be served through Mendes and Mount, 750 Seventh Avenue, New York, NY 10019.

14.     Lloyds Syndicate FDY-435 is a foreign entity engaged in the business of insurance in Texas.  Lloyds Syndicate FDY-435 may be served through Mendes and Mount, 750 Seventh Avenue, New York, NY 10019.

15.     Lloyds Syndicate HDU-382 is a foreign entity engaged in the business of insurance in Texas.  Lloyds Syndicate HDU-382 may be served through Mendes and Mount, 750 Seventh Avenue, New York, NY 10019.

## II.     JURISDICTION & VENUE

16.     The foregoing allegations are incorporated herein by reference.

17.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because Defendants are not citizens of any state of which Plaintiff is also a citizen, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

18.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims addressed herein took place, and the property that is the subject of this action is located, within this district.

## III.     FACTUAL BACKGROUND

19.     This is an insurance coverage dispute over Underwriters' refusal to pay for hail damage to a multifamily property in San Antonio.

**A.     The Policies**

20.     Lloyds Syndicate SJC-2003; Lloyds Syndicate HIS-0033; Lloyds Syndicate AMA-1200; Lloyds Syndicate TAL-1183; Lloyds Syndicate APL-1969; Lloyds Syndicate NAV-1221; Lloyds Syndicate ADV-780; and Lloyds Syndicate QBE-1886 (collectively the "2016 Underwriters") subscribed to and issued commercial property Policy No. NGW43209016 (the "2016 Policy") to Plaintiff for the period from February 5, 2016 through February 5, 2017.

21.     The 2016 Policy insures covered property against all non-excluded risks of physical loss or damage occurring during the policy period.

22.     The covered property insured by the 2016 Policy includes various scheduled locations within the United States in which Plaintiff and its subsidiaries and affiliates have an

interest, including the Sunset Canyon apartments located at 2170 Thousand Oaks Dr., San Antonio, Texas 78232 (the "Property").

23.     Subsequent to the issuance of the 2016 Policy, the Property was insured under commercial property Policy No. B1230AP04534A16 for the period from December 15, 2016 through December 15, 2017 (the "2017 Policy").  Lloyds Syndicate QBE-1886; Lloyds Syndicate ATL-1205; Lloyds Syndicate SKD-1897; Lloyds Syndicate CHN-2015; Lloyds Syndicate AMA-1200; Lloyds Syndicate ENH-5151; Lloyds Syndicate APL-1969; Lloyds Syndicate FDY-435; Lloyds Syndicate HDU-382; Lloyds Syndicate TAL-1183; and Lloyds Syndicate NAV-1221 (collectively the "2017 Underwriters") subscribed to and issued the 2017 Policy.

24.     Five of the Lloyd's syndicates named as Defendants in this case—Lloyds Syndicate AMA-1200; Lloyds Syndicate TAL-1183; Lloyds Syndicate APL-1969; Lloyds Syndicate NAV-1221; and Lloyds Syndicate QBE-1886 (collectively the "Overlapping Underwriters")—representing 60% of the risk on the 2016 Policy also subscribed to 41.5% of the risk under the 2017 Policy.

**B.      The Property, Hail Damage & Claim under the 2017 Policy**

25.     The Property is a large multifamily apartment complex, consisting of 27 buildings, a leasing center, a fitness center, two mail structures and a utility building, located in the desirable Thousand Oaks neighborhood on the north side of San Antonio.

26.     In August 2017, Plaintiff made a claim under the 2017 Policy after a post-Hurricane Harvey inspection of the Property revealed damage.

27.     The 2017 Underwriters retained McLarens to inspect the Property for damage following Plaintiff's notice in 2017.

28.     Rather than conduct a reasonable inspection of the Property, McLarens' adjuster, Tom Brownfield drove through the parking lots at the Property with one of Plaintiff's maintenance

workers.  Without ever stepping foot on any of the roofs at the Property, Mr. Brownfield concluded

that there was "[n]o hail damage."

29.     In March 2019, Plaintiff re-urged the claim for roof damage under the 2017 Policy,

citing April 11, 2017 as the date of loss (the "2017 Claim").  This time, the 2017 Underwriters

retained Defendant Engle Martin & Associates ("Engle Martin") to adjust the 2017 Claim.

30.     Engle Martin, in turn, retained Nelson Forensics, LLC ("Nelson Forensics") to

evaluate the roofs at the Property for hail damage.

31.     After inspecting the Property and reviewing weather data from the National

Oceanic & Atmospheric Administration, CompuWeather, and CoreLogic Weather Verification

Services, Nelson Forensics confirmed the existence of substantial hail damage to the roofs at the

Property, but represented that the damage occurred in April 2016.

32.     Engle Martin and Nelson Forensics negligently omitted and/or intentionally

excluded evidence of the significant hailstorm event occurring at the Property on or about April

11, 2017.

33.     On the basis of Nelson Forensics' evaluation, Engle Martin, on behalf of the 2017

Underwriters, denied the 2017 Claim by asserting that the hail damage at the property occurred

prior to the December 2016 inception of the 2017 Policy.

34.     At no time did Nelson Forensics, Engle Martin or any of the 2017 Underwriters

assert that notice of the claim was untimely.  Nor did any of these parties ever assert that any delay

in asserting Plaintiff's claim in 2019 prejudiced or otherwise impaired investigation of the 2017

Claim.

35.     The failure of the 2017 Underwriters, and of McLarens on Underwriters' behalf, to

perform a reasonable inspection of the Property in 2017 has caused Plaintiff substantial damages.

36.    The failure of Nelson Forensics, Engle Martin and the 2017 Underwriters to represent accurately the date of loss or to perform a reasonable investigation of the 2017 Claim has caused Plaintiff substantial damages.

**C.    The Claim under the 2016 Policy**

37.    Shortly after receiving Engle Martin's denial letter, PPA Group submitted a proof of loss to Defendants under the 2016 Policy identifying April 29, 2016 as the date of loss (the "2016 Claim").

38.    Defendants retained Underwriters to investigate and adjust the 2016 Claim.

39.    However, at no time after receiving notice under the 2016 Policy did McLarens or Defendants perform any inspection of the Property.

40.    Instead, McLarens requested documents already available to the 2016 Underwriters, including documents exchanged with Engle Martin, who acted as agent for the Overlapping Underwriters in responding to the 2017 Claim.

41.    Without conducting any inspection or other reasonable investigation of the 2016 Claim, McLarens denied Plaintiff's 2016 Claim on January 8, 2020.  According to McLarens, the delay in providing notice of the 2016 Claim until 2019 allegedly (1) deprived Underwriters of the opportunity to determine the cause and extent of the loss to the Property, including whether damage occurred prior to the inception of the 2016 Policy or was the result of deterioration or "simple weathering"; and (2) increased the cost of repairs, due to purported "inflation and/or the subsequent damage that resulted well after the Claim at Issue."

42.    Nowhere in McLarens' denial letter is there any acknowledgment of the opportunity given to McLarens and the Overlapping Underwriters in 2017 to inspect the roofs at the Property.  Nor is there an acknowledgment by McLarens or the Overlapping Underwriters that this opportunity to inspect in 2017 was wasted by McLarens' adjuster, Mr. Brownfield.  Nor is

there any acknowledgement of the prior inspection conducted in 2019 by Engle Martin and Nelson Forensics—performed on behalf of the Overlapping Underwriters—without any allegation that the ability to investigate had been impaired by the passage of time.

43.      In any event, any alleged prejudice relating to the timing of Plaintiff's notice of the 2016 Claim was the result of the Overlapping Underwriters' failure to perform a reasonable investigation or inspection of the Property when given the opportunity in 2017.

44.      Nowhere does McLarens' denial letter purport to substantiate speculation about prior damage, deterioration or "simple weathering" with any facts.

45.      Nowhere in McLarens' denial letter are there any facts supporting the 2016 Underwriters' allegations of inflation or subsequent damage.

46.      Plaintiff has disputed McLarens's denial of coverage, but the 2016 Underwriters have continued to refuse payment for the 2016 Claim and the nearly $1.3 million in property damage it represents. The 2016 Underwriters' wrongful denial of coverage—when liability is reasonably clear, without having conducted a reasonable explanation, and without a reasonable explanation of the factual basis for the denial of the Claim—has caused Plaintiff substantial damages.

## IV.    CAUSES OF ACTION

**A.    Breach of Contract (All Defendants)**

47.      The forgoing allegations are incorporated herein by reference.

48.      The 2016 Policy is a valid enforceable contract.

49.      The 2017 Policy is a valid enforceable contract.

50.      Plaintiff is insured under both the 2016 Policy and the 2017 Policy.

51.      Plaintiff has satisfied all conditions under both the 2016 and 2017 Policies.

52.     Based on information and belief, the subject hail damage at the Property occurred on or about April 11, 2017.

53.     The plain terms of the 2017 Policy unambiguously require the 2017 Underwriters to compensate Plaintiff for the 2017 Claim under the 2017 Policy.

54.     Alternatively, the terms of the 2017 Policy are ambiguous and must be construed in favor of coverage for the 2017 Claim.

55.     The 2017 Underwriters materially breached the 2017 Policy by failing and refusing to compensate Plaintiff for the 2017 Claim under the 2017 Policy.

56.     The 2017 Underwriters' breach of the 2017 Policy has caused Plaintiff substantial damages, including nearly $1.3 million in unpaid hail damage to the roofs at the Property.

57.     Alternatively, the hail damage to the Property occurred on or about April 29, 2016.

58.     The plain terms of the 2016 Policy unambiguously require the 2016 Underwriters to compensate Plaintiff for the 2016 Claim under the 2016 Policy.

59.     Alternatively, the terms of the 2016 Policy are ambiguous and must be construed in favor of coverage for the 2016 Claim.

60.     The 2016 Underwriters materially breached the 2016 Policy by failing and refusing to compensate Plaintiff for the 2016 Claim under the 2016 Policy.

61.     The 2016 Underwriters' breach of the 2016 Policy has caused Plaintiff substantial damages, including nearly $1.3 million in unpaid hail damage to the roofs at the Property.

**B.     Breach of the Duty of Good Faith and Fair Dealing (All Defendants)**

62.     The forgoing allegations are incorporated herein by reference.

63.     Defendants owe Plaintiff a duty of good faith and fair dealing in connection with handling of Plaintiff's claims under the 2016 and 2017 Policies.

64.     The 2017 Underwriters have violated their duties of good faith and fair dealing by and refusing payment for the 2017 Claim without a reasonable basis.  Underwriters' liability for Plaintiff's 2017 Claim is reasonably clear.  The 2017 Underwriters violated their duties of good faith and fair dealing by failing to conduct a reasonable inspection of the Property in 2017, by failing to perform a reasonable investigation of the 2017 Claim, by falsely representing the date of loss, and by overlooking and obscuring evidence that the subject hail damage occurred on or about April 11, 2017.

65.     Plaintiff has suffered, and will continue to suffer, actual damages as a result of the 2017 Underwriters' breaches of their duties of good faith and fair dealing.

66.     The 2017 Underwriters' acts or omissions in this regard, whether committed directly or through the conduct of Engle Martin and/or Nelson Forensics were malicious, fraudulent, and/or grossly negligent, justifying imposition of punitive and exemplary damages.

67.     The 2016 Underwriters have violated their duties of good faith and fair dealing by and refusing payment for the 2016 Claim without a reasonable basis. Underwriters' liability for Plaintiff's Claim is reasonably clear. The 2016 Underwriters failed to perform a reasonable inspection of the Property or provide a reasonable, truthful explanation of the factual basis for the 2016 Underwriters' denial of coverage.

68.     Plaintiff has suffered, and will continue to suffer, actual damages as a result of the 2016 Underwriters' breaches of their duties of good faith and fair dealing.

69.     Underwriters' acts or omissions in this regard, whether committed directly or through the 2016 Underwriters' adjuster, McLarens, were malicious, fraudulent, and/or grossly negligent, justifying imposition of punitive and exemplary damages.

C.     **Chapter 541 of the Texas Insurance Code (2016 Underwriters)**

70.     The forgoing allegations are incorporated herein by reference.

71.     By asserting that unspecified "inflation" or "subsequent damage" has exposed the 2016 Underwriters to "increased costs," the 2016 Underwriters have misrepresented material facts in violation of Section 541.060(a)(1) of the Texas Insurance Code.

72.     By refusing coverage for Plaintiff's 2016 Claim, without any inspection or support for the 2016 Underwriters' claims of prejudicial late notice, the 2016 Underwriters have failed to attempt in good faith to effectuate a prompt, fair or equitable settlement of the 2016 Claim with respect to which the 2016 Underwriters' liability is reasonably clear in violation of Section 541.060(a)(2) of the Texas Insurance Code.

73.     By making unsubstantiated claims of prejudice that did not exist for the Overlapping Underwriters or any Underwriters under the 2017 Policy—without any evidence of inflation or subsequent damage; without any evidence of prior damage, deterioration or "simple weathering"; and after having ignored opportunities to inspect and investigate the Property—the 2016 Underwriters have failed to promptly provide Plaintiff a reasonable explanation of the basis in the 2016 Policy, in relation to the facts or applicable law, for the 2016 Underwriters' denial of the 2016 Claim in violation of Section 541.060(a)(3) of the Texas Insurance Code.

74.     By twice foregoing the opportunity to inspect the hail damage at the Property, but nonetheless refusing coverage for Plaintiff's 2016 Claim, the 2016 Underwriters have refused to pay the 2016 Claim without conducting a reasonable investigation in violation of Section 541.060(a)(7) of the Texas Insurance Code.

75.     As a result of the 2016 Underwriters' violations of Chapter 541 of the Texas Insurance Code, Plaintiff has sustained substantial damages, including the denial of covered benefits and payments due under the 2016 Policy.

76.     The 2016 Underwriters, either directly or through their agent, McLarens,

knowingly committed the violations of Section 541.060 referenced above.  Plaintiff, therefore,

seeks, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three

times the amount of actual damages.

**D.     Notice of Intent to Pursue Claim under Chapter 541 of the Texas Insurance Code (2017 Underwriters)**

77.     The forgoing allegations are incorporated herein by reference.

78.     Pursuant to § 541.154 of the Texas Insurance Code, Plaintiff hereby provides notice

of its intent to pursue a claim against the 2017 Underwriters under § 541.151 of the Texas

Insurance Code by amending this suit after 60 days.

79.     The 2017 Underwriters have engaged in unfair or deceptive acts or practices as

defined by Section 541.061 of the Texas Insurance Code.

80.     By representing that the hail damage at the Property occurred in April 2016, the

2017 Underwriters have misrepresented material facts in violation of Section 541.060(a)(1) of the

Texas Insurance Code.

81.     By overlooking and omitting evidence that the hail damage to the Property occurred

on or about April 11, 2017, the 2017 Underwriters have refused to pay the 2017 Claim without

conducting a reasonable investigation in violation of Section 541.060(a)(7) of the Texas Insurance

Code.

82.     By representing to Plaintiff that the hail damage at the Property occurred in April

2016, while overlooking and excluding evidence that the damage actually occurred on or about

April 11, 2017, the 2017 Underwriters have failed to promptly provide Plaintiff a reasonable

explanation of the basis in the 2017 Policy, in relation to the facts or applicable law, for

Underwriters' denial of the Claim in violation of Section 541.060(a)(3) of the Texas Insurance Code.

83.	As a result of the violations of Chapter 541 of the Texas Insurance Code committed by the 2017 Underwriters, Plaintiff has sustained substantial damages, including the denial of covered benefits and payments due under the 2017 Policy.

84.	The 2017 Underwriters knowingly committed the violations of Section 541.060 referenced above.  Plaintiff, therefore, seeks, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

**E.	Chapter 542A of the Texas Insurance Code (All Defendants)**

85.	The foregoing allegations are incorporated herein by reference.

86.	Plaintiff has made a first-party Claim under the 2016 Policy and the 2017 Policy for hail damage.  Plaintiff has satisfied all conditions precedent to coverage under the 2016 and 2017 Policies.

87.	All 2016 and 2017 Underwriters have engaged in conduct that violates Chapter 542 of the Texas Insurance Code, including, without limitation, by delaying and failing to timely pay for the loss and damage to the Property in violation of Section 542.058 of the Texas Insurance Code.

88.	Consequently, Plaintiff is entitled to the damages set forth in Section 542.060(c) of the Texas Insurance Code, including interest on the amount of the 2016 and 2017 Claims at the rate of ten percent (10%) per annum, as well as those attorneys' fees incurred in pursuit of this Claim.

**F.	Attorneys' Fees (All Defendants)**

89.	The foregoing allegations are incorporated herein by reference.

90.     Due to Defendants' actions, Plaintiff has been required to retain the services of the law firm of Haynes and Boone, L.L.P. of Dallas, Texas.  Plaintiff has agreed to pay Haynes and Boone a reasonable fee for its services necessarily rendered and to be rendered in this action. Pursuant to Section 38.001 of the Texas Civil Practices & Remedies Code and/or Sections 541.152, 542.060 and/or 542A.007 of the Texas Insurance Code, Plaintiff is entitled to an award of reasonable attorneys' fees against Defendants in an amount to be established at trial.

## V.     JURY DEMAND

91.     Plaintiff hereby demands a jury trial pursuant to Federal Rule of Civil Procedure 38(b).

## VI.    PRAYER

WHEREFORE, Plaintiff prays that the Court grant the following relief:

1.     Judgment awarding Plaintiff all actual damages sustained as a result of the 2016 and 2017 Underwriters' breaches of contract;

2.     Judgment awarding Plaintiff all damages sustained as a result of Defendants' violations of Chapter 541 of the Texas Insurance Code;

3.     Judgment awarding Plaintiff all damages sustained as a result of the 2016 and 2017 Underwriters' violations of Chapter 542 of the Texas Insurance Code;

4.     Judgment awarding Plaintiff all damages sustained as a result of the 2016 and 2017 Underwriters' breaches of their duties of good faith and fair dealing, including punitive and exemplary damages;

5.     Judgment awarding Plaintiff all reasonable and necessary attorneys' fees and expenses incurred in this matter under Chapter 38 of the Texas Civil Practice & Remedies Code and Chapters 541 and 542 of the Texas Insurance Code;

6.      Judgment awarding Plaintiff pre-judgment and post-judgment interest in the amount allowed by law;

7.      Judgment awarding Plaintiff all costs of court; and

8.      Such other and further relief to which Plaintiff may be justly entitled.

Dated:        January 14, 2021.

Respectfully submitted,

By: */s/ Micah E. Skidmore*
    Micah E. Skidmore
    Texas Bar No. 24046856
    *Micah.skidmore@haynesboone.com*
    HAYNES AND BOONE, LLP
    2323 Victory Ave., Suite 700
    Dallas, TX  75219
    Telephone: (214) 651-5654
    Facsimile:  (214) 200-0659

    Andrew Van Osselaer
    Texas Bar No. 24110471
    *Andrew.VanOsselaer@haynesboone.com*
    HAYNES AND BOONE, LLP
    600 Congress Avenue, Suite 1300
    Austin, Texas 78701
    Telephone: (512) 867.8400
    Facsimile: (512) 867.8470

    **ATTORNEYS FOR PLAINTIFF PPA GROUP, LLC**

4841-0270-1271